AMERICAN SAND ASSOCIATION, a nonprofit corporation; Off–Road Business Association, a nonprofit corporation; San Diego Off–Road Vehicle Association, a nonprofit organization; California Off–Road Vehicle Association, a nonprofit organization; and American Motorcycle Association, District 37 Dual Sport, a nonprofit organization, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR; Gale Norton, Secretary of the Interior; and Bureau of Land Management, Defendants,

Center for Biological Diversity, a nonprofit organization; and Public Employees for Environmental Responsibility, a nonprofit organization, Defendant–Intervenors.

No. 02CV1072–B (POR).

United States District Court,
S.D. California.

June 18, 2003.

David P. Hubbard, Lounsberry, Ferguson, Altona and Peak, Escondido, CA, for plaintiffs.

Julie Anne Teel, Idyllwild, CA, for intervenors.

Charles R. Shockey, Sacramento, CA, U.S. Attorney CV, San Diego, CA, for defendants.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS AND DEFENDANT–INTERVENORS' CROSS–MOTIONS FOR SUMMARY JUDGMENT

BREWSTER, Senior District Judge.

## I. Introduction

Plaintiffs American Sand Association, et al., have sued the United States Department of the Interior, Gale Norton, Secretary of the Interior, and the Bureau of Land Management ("BLM") seeking to set aside a temporary closure of portions of the Algodones Dunes to off-highway vehicle use. Plaintiffs contend that the closures fail to comply with the procedures of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 et seq., and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 et seq.

The closures at issue are the result of a consent decree entered in another lawsuit between environmental organizations and the BLM in the Northern District of California. Pursuant to the terms of the settlement, the BLM agreed to temporarily close portions of the Algodones Dunes, located in Imperial County, to off-highway vehicle use until a new Recreational Area Management Plan could be implemented. Two of the environmental organizations involved in the Northern California action, the Center for Biological Diversity and Public Employees for Environmental Responsibility, have intervened as defendants in the present action.

The parties have brought cross-motions for summary judgment. For the reasons described below, the Court denies Plaintiffs' motion for summary judgment and grants Defendants and Defendant–Intervenors' motions for summary judgment.

## II. Background

In 1978, Congress designated 25 million acres of California as the California Desert Conservation Area ("CDCA"). FLPMA, 43 U.S.C. § 1781. The CDCA stretches from the Mexican border north to Death Valley and the eastern Sierra Nevada Mountains.

The FLPMA directed the Secretary of the Interior to develop a "comprehensive, long-range plan for the management, use, development, and protection of the public lands within the [CDCA]." 43 U.S.C. § 1781(d). In 1980, BLM, as the Secretary of Interior's designee, published and implemented a land management plan for the CDCA, called the California Desert Conservation Area Plan. The CDCA Plan permits a variety of activities, including livestock grazing, road-building, off-highway vehicle use, recreational use, water diversions, energy production, utility corridors, special use permits, land exchanges, mining, and other projects.

In 1987 the BLM amended the CDCA by adopting a Recreational Area Management Plan ("RAMP") for the Imperial Sand Dunes, also known as the Algodones Dunes. Under the 1987 RAMP, the Dunes have been managed as an area open to intensive OHV use. BLM estimates that over 600,000 visitors come to these sand dunes each winter season to ride in the dunes.

While the dunes are a popular recreational spot for OHV users, they are also the home to several endangered and threatened species, among them the Pierson's milk-vetch. In 1998, the Fish and Wildlife Service listed the Peirson's milk-vetch as a threatened species. In its listing decision, the U.S. Fish and Wildlife Service stated that the "primary threat" to the species is "destruction of individuals and dune habitat from OHV use and the

recreational development associated with it."

Section 7(a)(2) of the Endangered Species Act requires that federal agencies engage in a consultation process to ensure that their actions are not likely to jeopardize a listed species or destroy or adversely modify its critical habitat. 16 U.S.C. § 1536(a)(2). By March 2000 BLM had not carried out the Section 7 consultation on the Peirson's milk-vetch. On March 16, 2000, the Sierra Club and Defendant–Intervenors in this action, Public Employees for Environmental Responsibility and the Center for Biological Diversity, brought suit against BLM in United States District Court for the Northern District of California seeking to force the agency to comply with the ESA. On August 7, 2000 the court granted OHV organizations High Desert Multiple–Use Coalition, Desert Vipers, San Diego Off–Road Coalition, Association of California 4–Wheel Drive Clubs and Blue–Ribbon Coalition leave to intervene as defendants. Other OHV organizations, including plaintiffs in this action, American Motorcycle Association, and California Off–Road Vehicle Association, later sought to intervene as well. Their request to intervene was denied as untimely and prejudicial to the parties. The court, however, invited all of those intervenor-applicants to file amicus briefs and to appear at the hearings and ordered that they be served with all papers filed in this action.

During the course of the litigation in the Northern District of California, the BLM and OHV defendant-intervenors entered into a settlement with the plaintiffs whereby the BLM would close portions of the sand dunes to OHVs pending Section 7 consultation. After closing those portions of the dunes in November 2000, BLM initiated a review under NEPA. This entailed an environmental assessment, public comment, a finding of no significant impact and decision record. Following this re-

view process, BLM issued a new partial closure notice in September 2001 which superceded the earlier closure. This closure is to remain in effect until the Section 7 consultation has been completed and the BLM has issued a new RAMP. BLM expects to have the new RAMP completed this summer.

Plaintiffs in the present action have brought suit against BLM, alleging that it failed to follow the dictates of NEPA in closing portions of the dunes without first conducting NEPA review. Plaintiffs also allege that the closures were not authorized under FLPMA. Plaintiffs seek to have the interim closure now in place lifted.

## III. Parties

### A. Plaintiffs

Plaintiffs American Sand Association, SDORC, American Motorcycle Association District 37 Dual Sport and California Off–Road Vehicle Association are all non-profit corporations whose members regularly use their OHVs to access remote areas of the Algodones Dunes. Plaintiff Off–Road Business Association is a trade association whose members are owners and managers of companies that derive a substantial part of their income from the off-road recreation industry. All of the Plaintiffs allege that they have been harmed by the closure of the sand dunes to OHVs either financially or because they can no longer enjoy recreation in all portions of the dunes.

### B. Defendants

Defendant Bureau of Land Management is an agency of the United States Department of Interior. BLM is charged with the management of public lands, including those at issue in this case.

### C. Defendant–Intervenors

The Center for Biological Diversity ("CBD") is a non-profit corporation dedi-

cated to the preservation, protection, and restoration of biodiversity, native species, ecosystems, and public lands. Public Employees for Environmental Responsibility ("PEER") is a national non-profit corporation based in Washington, D.C. with chapters throughout the United States, including California. Both CBD and PEER contend that its members and staff derive scientific, recreational, conservation and aesthetic benefits from the Peirson's milk-vetch's existence at the Algodones Dunes and will be harmed if BLM lifts the temporary closure now in place.

## IV. Discussion

### A. Standard of Review

Plaintiffs allege violations of NEPA and FLPMA. As neither of these statutes provide a private cause of action, Plaintiffs' standing is based on the Administrative Procedures Act, 5 U.S.C. § 702. The APA provides that a court may set an agency action aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action must be upheld if the agency examined the relevant data and articulated a rational connection between the facts found and the decision made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

### B. Compliance with NEPA

■ Plaintiffs contend that the BLM failed to properly conduct a NEPA review prior to instituting the closures. At the outset, the Court notes that NEPA review was not necessary to institute these temporary closures. An environmental assessment or an environmental impact statement is not necessary for federal actions that conserve the environment. *Douglas County v. Babbitt,* 48 F.3d 1495, 1505 (9th Cir.1995).

■ Even if NEPA review were necessary, the Court finds that BLM complied with NEPA's requirements before instituting the present closures.

### 1. *Timing of the Environmental Assessment*

BLM began the NEPA review process while the first closure was in place. Following this review, BLM issued a second closure in September 2001 which superceded the earlier closure. Plaintiffs contend that this sequence of events violates NEPA because BLM had already committed to the closures before it began its NEPA review. They rely on *Metcalf v. Daley,* which states that agencies must prepare NEPA documents "before any irreversible and irretrievable commitment of resources" is made. 214 F.3d 1135, 1143 (9th Cir.2000).

The Court finds that BLM did not make an irretrievable commitment of resources before engaging in NEPA review. The first closure is not at issue, since it was superceded by the September 2001 closure. As for the present closure, which is the only one at issue here, it was not instituted until a complete NEPA analysis was conducted. The fact that the NEPA review was conducted while the earlier closure was in place does not invalidate the process. BLM was free to reopen the land following the environmental assessment had it found that closing the dunes was not necessary.

### 2. *Substantive Adequacy of the Environmental Assessment*

The Court has considered Plaintiffs' numerous arguments concerning the substantive adequacy of the environmental assessment and concludes that the conclusions reached by the BLM were not arbitrary or capricious. In particular, the Court finds that BLM did have adequate support for

the need for a closure. The BLM's 1988 report found significant impacts from OHV use. In addition, the FWS had earlier concluded that the "primary threat to PMV is destruction of individuals and dune habitat from OHV use and the recreational development associated with it." AR 639.

Plaintiffs dispute the BLM's interpretation of its findings. They cite a portion of the BLM's 1998 report that states that the six species of the Peirson's milkvetch appear to be as widespread and abundant in the entire open area in 1998 as they were in 1977. AR 481. Plaintiffs say this supports their contention that the plant can "thrive" or at least "peacefully coexist" with OHVs. This conclusion is contrary to that of the study's authors. The report attributes the study's findings to the fact that OHV use "does not encroach very intensively on much of the habitat of the plants in relatively large portions of the open area away from OHV staging areas." AR 481. The report also suggests that the apparent increase in plant abundance from 1977 to 1988 also could be due to the fact that different areas were surveyed in the two time periods and the fact that 1988 was a much wetter year. AR 516. The report cautioned that the results of its monitoring "should not be interpreted to mean that OHV use is somehow 'good' or even benign for the six species studied." AR at 278. It noted that "significant impacts from OHV use on all 6 species have been observed at and near staging areas." AR at 518. Plaintiffs' argument that there is no support for the need for closures is without merit.

Plaintiffs have submitted their own privately commissioned report by Thomas Olsen & Associates. The report, dated July 2, 2001, showed that during the spring of 2001 more than 71,000 PMV plants were growing in the open areas of the dunes. Plaintiffs contend that this shows that OHVs do not have a significant negative effect on the PMV population and that the closures were unnecessary.

Although the findings and conclusions of the Olsen report may conflict with the BLM's own report, this does not invalidate the BLM's decision to close portions of the dunes. BLM was entitled to rely upon its own experts' opinions. *See Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) ("[w]hen specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive"). BLM's decision to close portions of the dunes is entitled to substantial deference. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (agency action must be upheld if the agency examined the relevant data and articulated a rational connection between the facts found and the decision made).

### D. Compliance with FLPMA

■ Plaintiffs contend that the BLM lacked authority under the FLPMA to close the dunes because it had not demonstrated that an emergency existed. Plaintiffs cite a footnote in a Ninth Circuit case for the proposition that an agency must make such a finding before instituting closures. *See Humboldt County v. United States*, 684 F.2d 1276, 1284 fn. 9 (9th Cir. 1982). The footnote Plaintiffs refer to relates to now repealed sections of BLM's regulations, 43 C.F.R. §§ 6292.4(a) and 6290.0–5(g). The regulations as they currently stand do not require any finding of an emergency. Thus, Plaintiffs' argument that BLM lacked authority to close the dunes because it had not shown the existence of an emergency is without merit.

The Court further finds that the BLM had ample authority under the FLPMA to close the dunes to protect the Pierson's

milk-vetch. Under 43 C.F.R. § 8341.2(a), the BLM is required to *immediately* implement closures "where the authorized officer determines that off-road vehicles are causing or will cause considerable adverse effects upon soil, vegetation, wildlife, wildlife habitat, cultural resources, historical resources, threatened or endangered species ..." *Id.* In addition, 43 C.F.R. § 8364.1 authorizes the BLM to close lands or restrict its use "to protect persons, property and public lands and resources ..." Thus, BLM acted within its statutory authority when it temporarily closed portions of the dunes to OHVs.

## V. Conclusion

The Court hereby grants Defendants and Defendant–Intervenors' cross-motions for summary judgment, denies Plaintiffs' motion for summary judgment, and dismisses the case.

IT IS SO ORDERED.